**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 22 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff/Appellee,

v.

JORGE LUIS ORENDAIN,

Defendant/Appellant.

No. 98-4113
(D. Ct. No. 98-CR-0142-B)
(D. Utah)

---

**ORDER AND JUDGMENT** *

---

Before **TACHA** , **McKAY** , and **MURPHY** , Circuit Judges.

Defendant Jorge Luis Orendain appeals his conviction for possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). On appeal, he argues that: (1) the district court erred in dismissing the indictment against him without prejudice when the magistrate's delay caused a violation of the Speedy Trial Act; (2) the district court erred in denying his motion to suppress evidence; and (3) there was insufficient evidence to convict him. We affirm.

**I. Background**

---

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

On April 17, 1996, Utah Highway Patrol Sergeant Lance Bushnell was on routine patrol on I-70 in Sevier County, Utah. At approximately 11:00 a.m., he observed a Chevrolet flatbed truck with a broken or missing taillight, in violation of Utah Code Ann. § 41-6-140(5). Although daytime, Officer Bushnell could see the taillight because the vehicle had on its lights in the inclement weather. Officer Bushnell pursued the truck and further observed it violating Utah Code Ann. § 41-6-61(1) by twice crossing into the emergency lane. He pulled over the vehicle.

Upon stopping the truck, Officer Bushnell noticed that defendant was the driver and sole occupant and that the truck had a California license plate. Orendain produced a Texas driver's license to identify himself. Officer Bushnell requested the vehicle's registration. As Orendain searched for the registration, Officer Bushnell inquired as to Orendain's destination. Orendain initially replied that he was headed to Denver to transport vehicles, but, after Officer Bushnell suggested that the truck was not equipped to transport vehicles, he instead claimed that he was going to pick up some hay. While he continued to search for the registration, Orendain gave Officer Bushnell a copy of the truck's insurance form, which showed that a third party, David Jimenez, had purchased insurance for the truck the day before. Orendain eventually located the registration and handed it to Officer Bushnell. The registration indicated that the vehicle

belonged to Mark Perez. Orendain professed not to know either Jimenez or Perez, explaining that he had just purchased the vehicle for $10,000, paying $5000 down. He could not, however, provide the name of the person from whom he purchased the vehicle. Moreover, the truck was almost new, with only 750 miles on the odometer and a dealer sticker on the window which priced the truck at $24,000, an amount well in excess of Orendain's alleged purchase price. A subsequent computer check on the truck revealed that no one had reported it stolen.

Officer Bushnell took the registration and Orendain's license to his patrol car and filled out a citation for the violations he had observed. At that time, he motioned for defendant to come to his car, and he again inquired as to the purpose of Orendain's trip. Defendant reverted to his first response that he was going to Denver to transport vehicles. Officer Bushnell further asked Orendain whether there were any drugs inside the truck. Although defendant responded in the negative, he broke eye contact after answering the question. Officer Bushnell again asked about defendant's travel plans and whether Orendain was transporting drugs. Defendant reiterated his previous responses. After Officer Bushnell returned Orendain's documents and issued the citation, he requested in English and in Spanish if he could search the truck. Orendain consented.

Officer Bushnell searched the truck. During his initial examination, he

noticed an abnormal enclosure underneath the bed of the truck and some wire with non-factory silicone around it. Officer Bushnell asked defendant to drive the truck to a nearby gas station where he could conduct a closer examination of the vehicle. Defendant complied. At the gas station, Officer Bushnell looked between the tongue-and-groove slats on the truck bed and observed what he believed were kilograms of cocaine. He ultimately recovered 250 kilograms of cocaine from a hidden compartment beneath the bed of the truck. Defendant was arrested and jailed pending trial.

On April 24, 1996, a grand jury indicted defendant on one count of possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). The United States District Court for the District of Utah, Central Division, initially set defendant's trial for June 24, 1996. Defendant filed a motion to suppress the seized cocaine on May 24, 1996. The matter was referred to a magistrate judge who, over a year later, recommended denying the motion to suppress. The district court adopted the magistrate's recommendation on August 11, 1997, and subsequently reset defendant's trial for December 1, 1997. The trial was not held as scheduled, and on January 29, 1998, defendant moved to dismiss the indictment based on a violation of the Speedy Trial Act. The district court denied the motion, and the case proceeded to trial on February 10, 1998. The trial resulted in a mistrial when the jury could not reach a unanimous verdict.

The district court thereafter reconsidered defendant's motion to dismiss in light of this court's holding in United States v. Mora, 135 F.3d 1351, 1356-57 (10th Cir. 1998) (holding the Speedy Trial Act's excludable thirty-day under advisement period applies to magistrates). The district court found a violation of the Speedy Trial Act and entered an order dismissing the indictment against Orendain without prejudice on March 10, 1998.

The government immediately refiled its complaint against Orendain, and he was again indicted on March 18, 1998. On March 26, 1998, defendant filed a motion to suppress the cocaine seized by Officer Bushnell and motions to dismiss based on Speedy Trial Act and double jeopardy grounds. The district court denied the motions, and defendant was tried on April 10, 1998. The jury convicted Orendain of possession of cocaine with intent to distribute.

**II. Discussion**

**A. Remedy for Speedy Trial Act Violation**

The parties do not dispute that, with respect to defendant's first indictment, a violation of the Speedy Trial Act occurred, requiring dismissal. See, e.g., 18 U.S.C. § 3162(a)(2) (requiring dismissal of information upon motion of defendant when Speedy Trial Act is violated); accord United States v. Taylor, 487 U.S. 326, 332 (1988). Rather, the issue defendant raises on appeal is whether the district court erred in dismissing the indictment *without prejudice*. The Speedy Trial Act

delineates no preference for a particular kind of dismissal. See Taylor, 487 U.S. at 335. Instead, the determination of whether to dismiss with or without prejudice is committed to the sound discretion of the district court. See id. Although we will reverse the district court's remedy determination only for an abuse of discretion, see United States v. Saltzman, 984 F.2d 1087, 1092 (10th Cir. 1993), our deferential standard of review depends upon the district court having properly evaluated the requisite statutory factors in making its decision. See id. ("Because 'Congress has declared that a decision will be governed by consideration of particular factors,' appellate review is limited to ascertaining 'whether a district court has ignored or slighted a factor that Congress has deemed pertinent to the choice of remedy.'" (quoting Taylor, 487 U.S. at 336-37)); United States v. Tsosie, 966 F.2d 1357, 1361 & n.1 (10th Cir. 1992). The three non-exclusive factors the district court must consider are: "the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of [the Speedy Trial Act] and on the administration of justice." 18 U.S.C. § 3162(a)(2); accord Mora, 135 F.3d at 1358. In this case, the district court thoughtfully and adequately considered each of these factors in its March 10, 1998 decision to dismiss defendant's first indictment without prejudice. After carefully reviewing the record, including the district court's order, we find that the district court did not abuse its discretion.

**B. Motion to Suppress**

Orendain also argues that the district court committed reversible error in denying his motion to suppress the cocaine discovered in the truck he drove because it resulted from an unconstitutional search and seizure. [1] When reviewing the denial of a motion to suppress evidence, we accept the district court's findings of fact unless clearly erroneous and consider the evidence in the light most favorable to the government. See United States v. Hunnicutt, 135 F.3d 1345, 1348 (10th Cir. 1998). The ultimate determination of reasonableness under the Fourth Amendment is a question of law which we review de novo. See id.

The Fourth Amendment protects individuals from unreasonable searches and seizures. See U.S. Const. amend. IV. Under the exclusionary rule, evidence obtained in violation of the Fourth Amendment is inadmissable at trial. See, e.g., United States v. Muldrow, 19 F.3d 1332, 1335 (10th Cir. 1994). We must initially address Orendain's claim that his detention by Officer Bushnell was an unconstitutional seizure. Such a violation may make an otherwise constitutional search invalid under the Fourth Amendment if the search resulted from the illegal seizure. See, e.g., United States v. McSwain, 29 F.3d 558, 561-62 (10th Cir. 1994); United States v. Fernandez, 18 F.3d 874, 881-82 (10th Cir. 1994).

---

[1]Because we find no Fourth Amendment violation even assuming Orendain has standing to challenge the search of the truck, we decline to address the standing issue.

While a consensual police-citizen encounter does not implicate the Fourth Amendment, see United States v. Torres-Guevara, 147 F.3d 1261, 1264 (10th Cir. 1998), a routine traffic stop is considered a seizure within the meaning of the Fourth Amendment, see Hunnicutt, 135 F.3d at 1348. The principles set forth in Terry v. Ohio, 392 U.S. 1 (1968), govern whether a traffic stop is reasonable under the Fourth Amendment. Under Terry, a traffic stop must be "justified at its inception and the detention must be 'reasonably related in scope to the circumstances which justified the interference in the first place.'" United States v. Anderson, 114 F.3d 1059, 1063 (10th Cir. 1997) (quoting Terry, 392 U.S. at 20). "[A] traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring." United States v. Botero-Ospina, 71 F.3d 783, 787 (10th Cir. 1995) (en banc); accord Whren v. United States, 517 U.S. 806, 818 (1996). Because Officer Bushnell observed Orendain violate Title 41 of the Utah Code by not keeping his vehicle within a single lane, see Utah Code Ann. § 41-6-61(1), and by operating a vehicle with a broken or missing taillight, see Utah Code Ann. § 41-6-140(5), the initial stop did not offend defendant's Fourth Amendment rights.

However, defendant argues that Officer Bushnell's questioning regarding his travel plans and whether he was transporting narcotics violated the second

portion of the Terry inquiry. Specifically, Orendain asserts that Officer Bushnell violated his Fourth Amendment rights because Bushnell's questioning detained him and was unrelated to the reason for the stop. A traffic stop must generally "last no longer than is necessary to effectuate the purpose of the stop." Florida v. Royer, 460 U.S. 491, 500 (1983). We have previously articulated the parameters of a traffic stop as follows:

> An officer conducting a routine traffic stop may request a driver's license and vehicle registration, run a computer check, and issue a citation. When the driver has produced a valid license and proof that he is entitled to operate the car, he must be allowed to proceed on his way, without being subject to further delay by police for additional questioning.

United States v. McRae, 81 F.3d 1528, 1534 (10th Cir. 1996) (internal quotation marks and citations omitted). However, an officer may ask preliminary questions regarding travel plans "as a matter of course without exceeding the proper scope of a traffic stop." United States v. Hernandez, 93 F.3d 1493, 1499 (10th Cir. 1996). Furthermore, an officer may detain a driver for further questioning unrelated to the initial traffic stop when the officer develops a reasonable and articulable suspicion that the driver has or is engaging in illegal activity or if the initial detention has become a consensual encounter. See Hunnicutt, 135 F.3d at 1349.

We need not consider whether the questioning in this case occurred during a consensual encounter because, based upon our review of the record, we

conclude that Officer Bushnell had a reasonable and articulable suspicion to detain defendant for further questioning. "'[O]ne recurring factor supporting a finding of reasonable suspicion . . . is the inability of a defendant to provide proof that he is entitled to operate the vehicle he is driving.'" United States v. Villa-Chaparro , 115 F.3d 797, 802 (10th Cir.) (quoting United States v. Gonzalez-Lerma , 14 F.3d 1479, 1484 (10th Cir. 1994)), cert. denied , 118 S. Ct. 326 (1997); see also Hunnicutt , 135 F.3d at 1349. The record reveals that defendant did not provide such proof in that he: (1) provided a vehicle registration and insurance card that were in the names of two individuals whom the defendant professed not to know; (2) claimed to have recently purchased the truck but could not provide the name of the person who had sold it to him; and (3) stated that he purchased the truck for $10,000, an amount well below its fair market value. In addition, Officer Bushnell properly questioned defendant regarding his destination and the purpose of his travel, to which defendant gave inconsistent answers. See Hernandez , 93 F.3d at 1499. This provides additional support for a finding of reasonable suspicion. Cf., e.g. , Hunnicutt , 135 F.3d at 1349 (recognizing that inconsistent statements of destination support a finding of reasonable suspicion); United States v. Kopp , 45 F.3d 1450, 1453-54 (10th Cir.1995) (assuming that officer may question passenger concerning the destination of trip and noting that inconsistency in stories supports a finding of reasonable suspicion). Although

defendant consistently asserted that he was not carrying drugs in the truck, Officer Bushnell reasonably suspected otherwise because of Orendain's inability to prove ownership of the vehicle, his inconsistent responses regarding his travel plans, and the fact that he broke eye contact after answering the questions regarding drugs. Thus, we find that, viewing the facts in the light most favorable to the government, Officer Bushnell had reasonable suspicion to detain defendant while he inquired about potential drug trafficking and requested to search the truck.

Even though Officer Bushnell's detention of defendant was based on reasonable suspicion, the government still bears the ultimate burden of "'demonstrating that the seizure it seeks to justify on the basis of a reasonable suspicion was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure.'" United States v. Shareef, 100 F.3d 1491, 1500-01 (10th Cir. 1996) (quoting United States v. Perdue, 8 F.3d 1455, 1462 (10th Cir. 1993)). The government has met this burden here. Officer Bushnell's questions were not unduly intrusive or tangential, and the additional time that the officer detained defendant for questioning was brief. Therefore, we find that at the time Officer Bushnell requested to search the truck driven by Orendain, defendant was not detained in violation of the Fourth Amendment.

Having found that Orendain was not unlawfully detained at the time Officer

Bushnell requested permission to search the truck, we now turn our attention to defendant's claim that he did not give valid consent to the search. It is well established that an officer may conduct a warrantless search consistent with the Fourth Amendment if the challenging party gives his or her voluntary consent prior to the search. See Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973); United States v. Pena, 143 F.3d 1363, 1365-66 (10th Cir.), cert. denied, 119 S. Ct. 236 (1998). Although defendant permitted Officer Bushnell to search the truck, he argues that he did not give his voluntary consent to the search. Courts cannot presume that consent was either voluntary or involuntary. See Hernandez, 93 F.3d at 1500. Rather, to establish voluntary consent, the government must "show there was no duress or coercion, express or implied, that the consent was unequivocal and specific, and that it was freely and intelligently given." Id.[2] For the purposes of appellate review, the ultimate determination of "[w]hether a consent to search that does not follow a Fourth Amendment violation was voluntary is a question of fact to be determined from the totality of the circumstances." Id.; accord United States v. Doyle, 129 F.3d 1372, 1377 (10th

_____

[2] Because we have concluded that Orendain was not unlawfully detained at the time the search request was made, the government does not bear the heavier burden of proof which is necessary to establish the voluntariness of consent when it seeks to demonstrate that the consent to search cleansed the taint of an illegal detention, thereby rendering an otherwise invalid search valid under the Fourth Amendment. See United States v. McSwain, 29 F.3d 558, 562 (10th Cir. 1994).

- 12 -

Cir. 1997). Thus, we accept the district court's finding of voluntary consent unless it is clearly erroneous. See United States v. Orrego-Fernandez, 78 F.3d 1497, 1505 (10th Cir. 1996).

The district court adopted the recommendation of the magistrate judge, in which the magistrate concluded that the defendant gave voluntary consent to search the truck and that "[t]here is no evidence that the consent was obtained through any type of coercion or duress." Magistrate's Report and Recommendation at 22. Our review of the record reveals no clear error in this finding. Indeed, the fact that Orendain subsequently drove the truck to a nearby gas station where the officer could search it more closely and his lack of protest during the search of the truck further confirms the voluntariness of his consent. See United States v. Lopez, 777 F.2d 543, 548 (10th Cir. 1985) (finding voluntary consent in part because defendant "stood by and watched as the officers searched the vehicle and at no time objected"). Therefore, because defendant voluntarily consented to the search of the truck, the search did not constitute a Fourth Amendment violation. The district court properly denied Orendain's motion to suppress.

## C. Sufficiency of the Evidence

Finally, defendant argues that evidence presented at his trial was insufficient to support his conviction of possession of cocaine with intent to

distribute in violation of 21 U.S.C. § 841(a)(1). "'In making this argument, [defendant is] faced with a high hurdle.'" United States v. Jenkins, __ F.3d __, No. 98-3017, 1999 WL 288051, at *6 (10th Cir. May 10, 1999) (quoting United States v. Voss, 82 F.3d 1521, 1524-25 (10th Cir. 1996)). We review sufficiency of the evidence claims de novo, asking "only whether, taking the evidence -- both direct and circumstantial, together with the reasonable inferences to be drawn therefrom -- in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." Voss, 82 F.3d at 1524-25 (internal quotation marks and citations omitted). We determine the sufficiency of the evidence taking into account the inferences that can be drawn from the evidence as a whole. See Jenkins, 1999 WL 288051, at *6.

"To sustain a conviction of possession with intent to distribute under 21 U.S.C. § 841(a)(1), the government must prove that a defendant: '(1) possessed a controlled substance, (2) knew he possessed a controlled substance, and (3) intended to distribute the controlled substance.'" Id. (quoting United States v. Mains, 33 F.3d 1222, 1228 (10th Cir. 1994)). For the purposes of § 841(a)(1), possession may be either actual or constructive. See id. "Constructive possession occurs when a person knowingly has ownership, dominion or control over the narcotics and the premises where the narcotics are found." Id. (internal quotation marks and citation omitted). While circumstantial evidence may be used to

- 14 -

establish constructive possession, "the government must show a sufficient nexus between the defendant and the narcotics." Id. (internal quotation marks and citation omitted).

The evidence in this case demonstrates that defendant had constructive possession of the seized cocaine. The cocaine was found within a truck driven by defendant and which he claimed to have purchased. Orendain was also the sole occupant of the vehicle. See United States v. Lazcano-Villalobos, __ F.3d __, No. 98-2162, 1999 WL 261040, at *4 (10th Cir. May 3, 1999) (noting that exclusive possession of a vehicle can support an inference of constructive possession of drugs hidden in the vehicle). Defendant had "the ability to guide the destination of the cocaine and was thus constructively in possession of the cocaine." United States v. Carter, 130 F.3d 1432, 1441 (10th Cir. 1997), cert. denied, 118 S. Ct. 1856 (1998).

The record also contains ample evidence to support the jury's conclusion that defendant knowingly possessed the cocaine. The amount of cocaine discovered in the truck driven by defendant was substantial -- 250 kilograms. At trial, a special agent estimated the street value of the seized cocaine at approximately seventy-five million dollars ($75,000,000). It is unlikely that an individual would entrust such a large and valuable amount of drugs to an unsuspecting individual. In any event, we have previously found it "permissible

- 15 -

to infer that the driver of a vehicle has knowledge of the contraband within it."
United States v. Levario, 877 F.2d 1483, 1485-86 (10th Cir. 1989).

Finally, a jury may infer intent to distribute under § 841(a)(1) from the quantity of the drugs seized. See United States v. Coslet, 987 F.2d 1493, 1495 (10th Cir. 1993). The vast quantities of cocaine found in the truck driven by defendant belie any contention that the drugs were solely for his personal use. The evidence thus supports the jury's finding of intent to distribute. Therefore, we find that the evidence is sufficient to sustain defendant's conviction.

### III. Conclusion

For the reasons discussed above, we AFFIRM defendant's conviction.


ENTERED FOR THE COURT,


Deanell Reece Tacha
Circuit Judge