**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 18 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

ANGEL CONTRERAS-
CASTELLANOS, also known as
Alonzo Martinez,

        Defendant - Appellant.

No. 02-8062
D.C. No. 01-CR-0131-08-J
(D. Wyoming)

---

**ORDER AND JUDGMENT**  *

---

Before **EBEL**, **HENRY**, and **HARTZ**, Circuit Judges.

---

Angel Contreras-Castellanos appeals his conviction for conspiring to

possess with the intent to distribute in excess of 500 grams of methamphetamine

and cocaine, a violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846, challenging

the sufficiency of the evidence supporting the jury's verdict.  Upon review of the

---

\* This order and judgment is not binding precedent, except under the
doctrines of res judicata, collateral estoppel, and law of the case.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

record, we conclude that the evidence is sufficient, and we therefore affirm his conviction. [1]

# I.  BACKGROUND

Because the parties are familiar with the relevant facts, we summarize them only briefly, viewing the record in the light most favorable to the government.  See United States v. Voss, 82 F.3d 1521, 1524-25 (10th Cir. 1996).  In April 2001, law enforcement officials in Casper, Wyoming began using a confidential informant to buy methamphetamine from individuals suspected of conspiring to distribute the drug.  At the time, Mr. Contreras-Castellanos was living in an apartment there.

On April 5, 2001, Martin Jimenez-Oliva and Aurelio Topete-Plascencia met with the confidential informant and offered to sell the informant one pound of methamphetamine.  The confidential informant ordered four ounces of methamphetamine.  Messrs. Oliva and Topete then drove to Mr. Contreras-Castellanos's apartment.  Mr. Oliva entered the apartment, remained for fourteen minutes, returned to a prearranged meeting place, and delivered four ounces of methamphetamine to the confidential informant.  Mr. Oliva supplied the informant

---

[1]  After examining the record and the parties' briefs, this panel has determined unanimously to honor the parties' request for a decision on the briefs. See Fed. R. App. P. 34(f).

with a phone number for someone named "Angel" and stated that the informant could obtain more methamphetamine from Angel if Mr. Oliva was unavailable. He also told the informant that he could pay Angel for the four ounces that had just been delivered. This sequence was repeated on April 13, 2001 and again on May 4, 2001: the informant ordered methamphetamine, Mr. Oliva or Mr. Topete traveled to Mr. Contreras-Castellanos's apartment, one of them entered the apartment, and one of them then met with the informant and delivered methamphetamine.

On August 19, 2001, an undercover agent from the United States Drug Enforcement Agency (DEA) met with Mr. Oliva and Mr. Topete and ordered a half pound of methamphetamine. Mr. Oliva and Mr. Topete drove to a trailer house to which Mr. Contreras-Castellanos had moved. They entered the trailer, stayed for nine minutes, and then delivered half a pound of methamphetamine to the undercover DEA agent. On August 28, 2001, the undercover agent negotiated the purchase of an additional two ounces of methamphetamine. Mr. Oliva and Mr. Topete again drove to Mr. Contreras-Castellanos's trailer, entered briefly, and returned to the undercover agent with the requested amount of the drug.

At trial, Lorenzo Delgado (one of the individuals charged in the conspiracy) testified about Mr. Contreras-Castellanos's role in the distribution scheme. Mr. Delgado testified that between March 2000 and the summer of 2001, he observed

Mr. Contreras-Castellanos obtain one-half pound of methamphetamine from Mr. Oliva on two occasions. Mr. Delgado also reported that he saw Mr. Contreras-Castellanos obtain several ounces of methamphetamine from Mr. Contreras-Castellanos's brother and ten ounces of methamphetamine from Mr. Laurencio Jimenez-Oliva. Additionally, Mr. Delgado stated that in August or September 2001, he observed Mr. Oliva deliver a half pound of methamphetamine to Mr. Contreras-Castellanos at Mr. Delgado's house. Finally, Mr. Delgado reported that, on one occasion in the summer of 2001, he observed Mr. Contreras-Castellanos, Mr. Topete, and two other men deliver cash to a methamphetamine source whom he knew as "Negro."

In addition to the conspiracy count, the government charged Mr. Contreras-Castellanos with distribution of methamphetamine, a violation of 21 U.S.C. § 841(a)(1), (b)(1)(B) and 18 U.S.C. § 2, and unlawful entry after prior deportation, a violation of 8 U.S.C. § 1326(a)(2). Mr. Contreras-Castellanos pleaded guilty to the § 1326(a)(2) violation. The jury acquitted him of the distribution charge but convicted him of the conspiracy charge. The court sentenced him to 188 months' imprisonment on the conspiracy count and twenty four months on the § 1326(a)(2) count, to be served concurrently.

## II.  DISCUSSION

On appeal, Mr. Contreras-Castellanos challenges the sufficiency of the evidence to support the conspiracy conviction.   He argues that one of the law enforcement officers who conducted surveillance outside Mr. Contreras-Castellanos's apartment and trailer admitted that he never directly observed Mr. Contreras-Castellanos to be present on the date of the charged transactions.  Mr. Contreras-Castellanos adds that the confidential informant testified at trial that the informant never met him until the trial began.  Mr. Contreras-Castellanos concedes that Mr. Delgado testified that he was directly involved in obtaining and selling methamphetamine.  However, according to Mr. Contreras-Castellanos, "Mr. Delgado is an admitted alcoholic who passed out numerous times from drinking beer and an admitted liar."  Aplt's Br. at 12.

In challenging the sufficiency of the evidence, Mr. Contreras-Castellanos faces a high hurdle: we must examine the record de novo, asking only whether the evidence—both direct and circumstantial—together with the reasonable inferences to be drawn therefrom and viewed in the light most favorable to the government, permits a reasonable jury to find the defendant guilty beyond a reasonable doubt. Voss, 82 F.3d at 1524-25.  "Rather than examining the evidence in bits and pieces, we evaluate the sufficiency of the evidence by considering the collective inferences to be drawn from the evidence as a whole."        United State v. Wilson   ,

107 F.3d 774, 778 (10th Cir. 1997) (quotations marks omitted).  We may reverse his conviction "only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  United States v. Wacker, 72 F.3d 1453, 1462-63 (10th Cir. 1995).

In order to convict Mr. Contreras-Castellanos of the conspiracy charge, the government was required to prove the following elements beyond a reasonable doubt: "(1) an agreement with another person to violate the law, (2) knowledge of the essential objectives of the conspiracy, (3) knowing and voluntary involvement, and (4) interdependence among the alleged conspirators."  United States v. Carter, 130 F.3d 1432, 1439 (10th Cir. 1997).  "Circumstantial evidence is sufficient to prove a conspiracy."  United States v. Pretty, 98 F.3d 1213, 1218 (10th Cir. 1996); see also United States v. Brown, 200 F.3d 700, 708 (10th Cir. 1999) ("Circumstantial evidence is often the strongest evidence of conspiracy.").  Moreover, "[t]he defendant's participation in or connection to the conspiracy need only be slight, so long as sufficient evidence exists to establish the defendant's participation beyond a reasonable doubt."  United States v. Johnston, 146 F.3d 785, 789 (10th Cir. 1998).

Upon review of the record, we conclude that the evidence from law enforcement agents, the confidential informant, and Mr. Delgado is sufficient to support Mr. Contreras-Castellanos's conspiracy conviction.  Even though the law

enforcement agents did not directly observe him to be present during specific transactions, the evidence noted by the government, including the repeated use of his apartment and his trailer to accomplish the transactions, Mr. Oliva's reference to "Angel" (Mr. Contreras-Castellanos's given name) as a person who could obtain methamphetamine for the confidential informant, and Mr. Delgado's direct testimony as to Mr. Contreras-Castellanos's role in the distribution scheme allows a reasonable jury to find the elements of the conspiracy charge beyond a reasonable doubt. Mr. Delgado's alleged alcoholism and his possibly untruthful statements about other matters need not preclude a reasonable juror's believing his testimony about Mr. Contreras-Castellanos's conduct. See Tapia v. Tansy, 926 F.2d 1554, 1562 (10th Cir. 1991) ("Confused, self-contradicting testimony by a drug addict does not make the witness's testimony inherently incredible."); see also United States v. Martinez, 877 F.2d 1480, 1482 (10th Cir. 1989) (holding that impeachment of a witness as a drug addict or as having a history of emotional problems is a question of credibility for the jury).

## III. CONCLUSION

Accordingly, we AFFIRM Mr. Contreras-Castellanos's conviction for conspiring to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846.


Entered for the Court,


Robert H. Henry
Circuit Judge