UNITED STATES of America, Plaintiff-Appellant,

v.

Martin P. DYER, Defendant-Appellee.

No. 76–1680.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 7, 1976.

Decided Dec. 28, 1976.

**1314**

David C. Mebane, U. S. Atty., Grant C. Johnson, Asst. U. S. Atty., Madison, Wis., for plaintiff-appellant.

Donald R. McCallum, Madison, Wis., for defendant-appellee.

Before TONE and WOOD, Circuit Judges, and CAMPBELL, Senior District Judge.*

TONE, Circuit Judge.

The government appeals in this criminal case from a judgment of acquittal following a bench trial. The charge was concurring in the use of the forged signature of a federal judge to authenticate a document, in violation of 18 U.S.C. § 505. The defendant has moved to dismiss the appeal for want of jurisdiction. Because our jurisdiction depends on whether the District Court "has resolved against the defendant all of the factual issues necessary to support a finding of guilt under the correct legal standard," *United States v. Jenkins*, 420 U.S. 358, 367, 95 S.Ct. 1006, 1012, 43 L.Ed.2d 250 (1975), jurisdiction and the merits must be considered together. See *United States v. Certified Grocers Co-Op*, 546 F.2d 1308 (7th Cir. 1976).

The government's case consisted of only a written stipulation which recited the following facts: James Sweeney, a veterinarian licensed to practice in Illinois and Ohio, applied for a license with the Wisconsin Veterinary Board but twice failed that board's practical examination. In 1970 he retained the defendant, Martin Dyer, a Wisconsin attorney, to assist him in obtaining a Wisconsin license. During the period 1970 to 1973 Dyer informed Sweeney that he had held conferences with the Veterinary Board and the Wisconsin Attorney General's office about the Sweeney application and had initiated an action in the United States District Court for the Western District of Wisconsin seeking to compel the board to issue Sweeney a license. Dyer assured Sweeney that negotiations were progressing and a license would be issued.

On April 11, 1974 Sweeney accompanied Dyer to Madison, Wisconsin, for the purpose of attending a hearing which Dyer had represented was to be held the following day before United States District Judge James E. Doyle. Early the following morning Dyer left the motel where they were staying, "presumably to [go to] the Federal Courthouse in Madison," and went to the offices of a Madison law firm, arriving there at about 8:30 A.M. At his request a secretary in that office typed in final form, from a rough copy furnished her by Dyer, a "Consent Order" which contained a place for Judge Doyle's signature. The order was captioned "In the United States District Court for the Western District of Wisconsin," showed Sweeney as plaintiff and the State of Wisconsin as defendant, recited that the parties had settled their differences, and ordered that Sweeney be issued a license as a Doctor of Veterinary Medicine in Wisconsin. Dyer departed with the document. At about 10:30 A.M. that morning he returned to the motel with the document, which by then bore a signature purporting to be that of Judge Doyle, and presented the document to Sweeney.

---

* The Honorable William J. Campbell, Senior District Judge of the United States District Court for the Northern District of Illinois, is sitting by designation.

The "Consent Order" was not in fact signed by Judge Doyle or with his permission. His signature "was affixed to [the document] by a person or persons unknown to" Judge Doyle. No case entitled *James Sweeney v. State of Wisconsin* was ever docketed in the Western District of Wisconsin.

Apparently believing that the order was genuine, Sweeney borrowed money and made other financial commitments looking toward the establishment of a veterinary clinic in Minocqua, Wisconsin. Despite assurances and reassurances from Dyer, Sweeney did not receive a license.

18 U.S.C. § 505 provides in pertinent part that

> "[w]hoever forges the signature of any judge . . . of any court of the United States . . . or forges or counterfeits the seal of any such court, or knowingly concurs in using any such forged or counterfeit signature or seal, for the purpose of authenticating any proceeding or document"

commits an offense against the United States.[1] The indictment against Dyer charged that he "knowingly and intentionally did concur in the using of the forged signature of" Judge Doyle "for the purpose of authenticating a Consent Order" of Judge Doyle's court.

Judge Robert W. Warren of the Eastern District of Wisconsin, who was designated to hear the case, observed in ruling on a pretrial motion to dismiss the indictment on the ground that the statute was unconstitutionally vague, that the government would be required to prove that "a forgery occurred within the common law definition of that crime as set out in *Levinson v. U. S.* [47 F.2d 470 (6th Cir. 1931)]." That case defines common law forgery to include fraudulent intent on the part of the signer. Despite this clear statement of the proof the court would require under the indictment as it then stood, the government neither sought a superseding indictment to allege that the document was "counterfeit"[2] nor offered any proof of the intent of the signer of the document, who was never identified. Instead, the government submitted the case to the court on a stipulation of facts which made no reference to the intent of the unidentified signer.

Judge Warren predictably found Dyer not guilty, adhering to his previously-expressed view that the government had to prove that the document was forged, and to do so had to prove that it was signed with fraudulent intent. In the absence of proof that the signature was forged, the defendant could not be found to have "knowingly and intentionally . . . concur[red] in the using of the forged signature." The judge noted that the indictment did not charge knowing use of a "counterfeit" signature, and that if it had "a different result might be warranted."[3] There was no find-

---

1. The full text is as follows:

 "Whoever [1] forges the signature of any judge, register, or other officer of any court of the United States, or of any Territory thereof, or [2] forges or counterfeits the seal of any such court, or [3] knowingly concurs in using any such forged or counterfeit signature or seal, for the purpose of authenticating any proceeding or document, or [4] tenders in evidence any such proceeding or document with a false or counterfeit signature of any such judge, register, or other officer, or a false or counterfeit seal of the court, subscribed or attached thereto, knowing such signature or seal to be false or counterfeit, shall be fined not more than $5,000 or imprisoned not more than five years, or both."

 (Bracketed designations inserted.)

2. While this would have improved the government's position, the statutory language would still have given rise to a problem. See note 3, *infra*.

3. We need not decide whether this is so. We note, however, that "counterfeit" also connotes fraudulent intent. Moreover, the first and second clauses of 18 U.S.C. § 505 (see note 1, *supra*) use the terms "forges the signature of any judge" and "forges or counterfeits the seal of any such court," and the third clause, which is the one under which the indictment was brought, refers to concurring in the use of "any such forged or counterfeit signature or seal." The demonstrative "such" seems to indicate an intention to describe a "forged" signature. This inference is perhaps weakened, however, by the use in the final clause of the section of

ing with respect to the state of mind with which Dyer acted.

 If it were necessary to reach the issue, much could be said for the District Court's view that to prove the offense charged in the indictment the government was required to establish that the judge's signature was "forged," and that this meant it was necessary to prove the signer's intent.[4] But even assuming that the government is correct in arguing that "forged" may be interpreted to mean merely "false," an essential element of the offense charged is missing from the court's findings, *viz.*, that the defendant himself acted knowingly when he "concurred" in the use of the false signature. While a rational mind could hardly conclude that he did not, no finding was made on the point. It is for the trier of fact to draw the inferences, however obvious, and we have no power to do so. *Cf. United States v. Certified Grocers Co-Op, supra,* 546 F.2d at 1313. Therefore, even if we disagreed with the District Court's interpretation of "forged," we would be powerless to allow the appeal or grant the government relief. *United States v. Jenkins, supra,* 420 U.S. at 367, 95 S.Ct. 1006.

Accordingly, the appeal must be dismissed for want of jurisdiction.

### APPEAL DISMISSED.

the words "any such . . . document with a false or counterfeit signature."

**4.** Forgery at common law required proof of fraudulent intent. See *Gilbert v. United States,* 370 U.S. 650, 656, 82 S.Ct. 1399, 8 L.Ed.2d 750 (1962); *United States v. Wilkins,* 328 F.2d 120, 121 (2d Cir. 1964); *Levinson v. United States,* 47 F.2d 470, 471 (6th Cir. 1931). When there is no indication to the contrary, "it is fair to assume that Congress used ["forged"] in the statute in its common law sense." *Gilbert v. United States, supra,* 370 U.S. at 655, 82 S.Ct. at 1402. The statute itself is ambiguous on the point in issue. Whether through inadvertence or design, the first three clauses of § 505 (see note 1, *supra*) are more narrowly drawn than the fourth and final clause of that section and more narrowly drawn than other sections of

the code that prohibit the making and uttering of false instruments, ch. 25 of Title 18, § 471 *et seq.* The use in the fourth clause of "false" instead of "forged" in describing the offense of tendering "in evidence any such proceeding or document with a false or counterfeit signature . . . knowing such signature . . . to be false or counterfeit" is an indication that Congress knew how to describe a signature which is merely spurious, regardless of the intent with which it was executed, when it wished to do so. Yet the fourth clause's demonstrative "such," as it modifies "document," seems to refer back to the document containing the forged signature of the first and third clauses. If this is so, the forged signature of the earlier clauses is described in the fourth clause as a "false or counterfeit signature."