**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**James N. BARBER, Defendant–Appellant.**

**No. 93–4096.**

United States Court of Appeals,
Tenth Circuit.

Nov. 7, 1994.

Submitted on the briefs.[1]

Scott M. Matheson, Jr., U.S. Atty. for the Dist. of Utah, Salt Lake City, UT, and Patrick J. Schneider, Sp. Asst. U.S. Atty., Phoenix, AZ, on the brief for plaintiff-appellee.

---

**1.** After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument.

Edward K. Brass, Salt Lake City, UT, for defendant-appellant.

Before ANDERSON, McKAY and BRORBY, Circuit Judges.

BRORBY, Circuit Judge.

James N. Barber was indicted and convicted for forging the signature of a judge of the United States Court of Claims, in violation of 18 U.S.C. § 505. Mr. Barber appeals his conviction and his sentence arguing the jury instructions concerning intent to defraud were incomplete and erroneous, the district court failed to abide by Fed.R.Crim.P. 11, and the district court erred in imposing a vindictive sentence and harsher sentence after trial than had been imposed during the initial guilty plea. We affirm the conviction and the sentence.

## BACKGROUND

Mr. Barber, an attorney, agreed to represent George Caine in a civil lawsuit that Mr. Caine had initiated previously with a different attorney. Mr. Caine gave Mr. Barber a $5,000 retainer. Due to Mr. Barber's failure to prosecute the case, the lawsuit was dismissed in 1988. However, Mr. Barber represented to Mr. Caine the lawsuit was continuing to proceed slowly. In 1991, Mr. Barber informed Mr. Caine the lawsuit had recently been dismissed and gave Mr. Caine documents bearing a forged signature of the presiding judge, Chief Judge Smith of the Court of Claims.

Upon learning the lawsuit had been dismissed, Mr. Caine desired to initiate an appeal. Mr. Caine called the judge's chambers to inquire about the timing for filing a notice of appeal and learned the lawsuit had been dismissed three years earlier. Mr. Caine told the judicial clerk the case had just recently been dismissed and that Mr. Caine had an order signed by the judge dismissing the suit on April 14, 1991. The clerk asked Mr. Caine to fax all purported court orders to the court so they could inspect the documents. After reviewing the documents, the court contacted the Federal Bureau of Investigation.

After Mr. Barber was indicted, he entered into a plea agreement with the government. However, upon Mr. Barber's plea of guilt, the district court imposed a sentence greater than the sentence contained in the plea agreement. In response to this more severe sentence, Mr. Barber moved for resentencing or alternatively to withdraw his plea. The judge ordered the guilty plea stricken and set the matter for trial. After the jury conviction, the judge sentenced Mr. Barber to a harsher sentence than had originally been imposed as a result of the guilty plea.

I

Mr. Barber, on appeal, first challenges the jury instructions. Section 505 of 18 U.S.C. states it is a crime to "forge[ ] the signature of any judge ... for the purpose of authenticating any proceeding or document ... knowing such signature ... to be false or counterfeit." It is accepted in other circuits that this forgery statute necessarily includes the element of intent to defraud. *See United States v. London,* 714 F.2d 1558, 1563 (11th Cir.1983); *United States v. Bertrand,* 596 F.2d 150, 151 (6th Cir.1979); *United States v. Dyer,* 546 F.2d 1313, 1316 (7th Cir.1976). Mr. Barber proposed the instructions to the jury include the following language:

> To act with an "intent to defraud" means to act with the intent to deceive or to cheat, ordinarily for the purpose of either causing some financial loss to another or for the purpose of bringing about some financial gain to one's self.

The jury instructions given on intent to defraud defined the phrase as follows: "To act with 'intent to defraud' means to act with intent to deceive or to cheat someone." Therefore, the district court included intent to defraud as an element of the offense and defined it. Mr. Barber claims this shortened jury instruction is prejudicial error, as intent to defraud requires financial gain.

Mr. Barber fails to state in his brief whether he raised an objection to the jury instruction and where in the record any objection can be found. *See* 10th Cir.R. 28.2(d). Therefore, although Mr. Barber offered an alternative jury instruction, we assume no objection was raised to the proffered jury instructions, and we apply a plain error stan-

dard of review. *United States v. Smith*, 13 F.3d 1421, 1424 (10th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 209, 130 L.Ed.2d 138 (1994); Fed.R.Crim.P. 30 & 52(b). The plain error standard of review requires us to consider whether the defendant was denied the right to a fair and impartial trial. *United States v. Uresti–Hernandez*, 968 F.2d 1042, 1046 (10th Cir.1992). "To constitute plain error, the district court's error must have been both 'obvious and substantial.'" *United States v. Brown*, 996 F.2d 1049, 1053 (10th Cir.1993) (quoting *United States v. Mitcheltree*, 940 F.2d 1329, 1333–34 (10th Cir.1991)).

■ The additional phrase Mr. Barber proposed, "ordinarily for the purpose of ... causing some financial loss," is qualitative and adds no substantive change to the jury instruction. Neither Mr. Barber's definition of intent to defraud nor the trial court's definition necessarily requires financial gain or loss. As such, plain error has not been shown since the tendered instruction is substantively identical to Mr. Barber's proposed instruction.

■ Mr. Barber argues financial loss or gain is a required element of 18 U.S.C. § 505; however, he has failed to demonstrate this requirement. Section 505 itself does not mention financial gain or loss, nor does it even mention "intent to defraud." Of the cases Mr. Barber relies on to argue financial gain is a requirement of § 505, each postulates intent to defraud as part of the forgery crime. However, none of the cases explicitly requires financial gain or loss. Mr. Barber argues the requirement can be inferred because in the only reported case in which the government attempted to prosecute someone for using the forged signature of a judge for a purpose other than financial fraud, the trial court acquitted the defendant and the acquittal was affirmed on appeal. *See Dyer*, 546 F.2d 1313. However, Mr. Barber himself admits the judgment of acquittal in *Dyer* was affirmed on "technical grounds," specifically the lack of jurisdiction. *Id.* at 1316. Mr. Barber relies on a footnote in *Dyer* stating § 505 requires fraudulent intent and stating the terms counterfeit and forged are not synonymous. *See id.* at 1315 n. 3. This footnote, although clearly requiring proof of fraudulent intent, does not require financial loss or gain to constitute a violation of § 505.

There is no reported Tenth Circuit or United States Supreme Court case concerning the construction of 18 U.S.C. § 505; therefore, there is no clear rule that the Tenth Circuit requires financial gain or loss to sustain a conviction under 18 U.S.C. § 505. Also, no case from another circuit explicitly requires financial gain or loss to establish fraudulent intent, although all of the reported § 505 convictions in the other circuits did involve financial gain or loss. *See London*, 714 F.2d 1558 (an attorney used a photocopy of a judge's signature to forge a document requiring the clients to pay money that would be held by the attorney); *Bertrand*, 596 F.2d 150 (§ 505 would be violated by an attorney who forged a judge's signature in an effort to falsely induce the clients to reimburse the attorney for a court filing fee).

A common sense and common definition of fraudulent intent demands the perpetrator act for personal benefit or to deprive the other person of something. That something need not be money. *See, e.g., Blacks Law Dictionary* 381 (6th ed. 1990) ("*Intent to defraud* means an intention to deceive another person, and to induce such other person, in reliance upon such deception, to assume, create, transfer, alter or terminate a right, obligation or power with reference to property"); Devitt et al., *Federal Jury Practice and Instructions*, 4th ed., § 16.07 ("To act with 'fraudulent intent' means to act knowingly and with the intention or the purpose to deceive or to cheat. A 'fraudulent intent' is accompanied, ordinarily, by a desire or a purpose to bring about some gain or benefit to oneself or some other person or by a desire or a purpose to cause some loss to some person."). We find no error with the jury instructions. As such, there was no obvious and substantial error in the jury instructions by the district court. Failure to include in the jury instruction on intent to defraud the additional phrase, "ordinarily for the purpose of either causing some financial loss to another or for the purpose of bringing about some financial gain to one's self," is not plain error.

It is not necessary to our decision to decide the meaning of intent to defraud or even to decide whether intent to defraud is an element of the crime under § 505. Therefore, we need not decide these issues now.

Today our holding is simply that the district court did not commit plain error in the instructions given to the jury.

## II

Mr. Barber also claims the district court erred in failing to grant his motion for a judgment of acquittal. We review the evidence in the light most favorable to the government. If there is evidence from which the jury could reasonably find Mr. Barber guilty beyond a reasonable doubt, we uphold the denial of a motion for judgment of acquittal. *United States v. Frank,* 901 F.2d 846, 848 (10th Cir.1990):

■ Mr. Barber claims he is entitled to an acquittal because there is insufficient evidence of his fraudulent intent. He argues fraudulent intent was not proved beyond a reasonable doubt, because the jury was not required to find intent to cause financial loss or gain and there existed no evidence showing Mr. Barber caused his client a financial loss.

We reject Mr. Barber's argument. The jury was required to make a finding that Mr. Barber intended to defraud his client by forging the signature of the judge. The record reveals the evidence was sufficient to support the jury's conclusion that Mr. Barber had such intent: Mr. Barber accepted a retainer to represent Mr. Caine; Mr. Barber lied to Mr. Caine about the status of Mr. Caine's lawsuit; and Mr. Barber created false court documents and signed the judge's name on these documents. This is sufficient evidence to show Mr. Barber intended to deceive Mr. Caine. The evidence also satisfies each element explicitly included in § 505: Mr. Barber signed the name of a judge to authenticate a document, knowing the signature to be false. The district court did not err in refusing to grant Mr. Barber's motion for a judgment of acquittal.

## III

■ Mr. Barber claims on appeal the district court violated Fed.R.Crim.P. 11(e)(4) by failing to inform Mr. Barber, before initially accepting his guilty plea, that the court was not going to adopt the sentence in the plea agreement. Rule 11 mandates the court advise the parties of the court's intentions and give the defendant an opportunity to withdraw the plea.[2]

The district court, in open court on Mr. Barber's motion, informed the parties the court would not accept the plea agreement and therefore struck Mr. Barber's guilty plea. The judge satisfied Rule 11 by advising the parties of the court's rejection of the plea agreement and by allowing the defendant to withdraw the plea. The district court judge did comply with Rule 11 by granting Mr. Barber's request to withdraw the plea. The judge satisfied Rule 11.

■ Mr. Barber also argues that if his conviction is upheld, he must be sentenced in accordance with the plea agreement, which was rejected by the district court. Mr. Barber cites no authority for this argument. Rule 11(e)(2) clearly states the court is free to accept or reject a plea agreement. Here, the district court rejected the plea agreement, and Mr. Barber was tried by a jury. A defendant has no absolute right to have his plea agreement accepted. *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 498–99, 30 L.Ed.2d 427 (1971). Accordingly, we reject Mr. Barber's arguments regarding sentencing.

## IV

■ Mr. Barber alleges the court retaliated against him by imposing a more severe sentence following the jury trial than it had imposed when Mr. Barber pled guilty.[3] Mr. Barber claims this retaliation was in response to his withdrawal of his guilty plea. However, Mr. Barber has failed to show evidence of retaliation. According to the trial and sentencing record, the post-trial sentence was more severe than the sentence entered after the plea because the court initially gave Mr. Barber a two-point reduction

---

2. If the court rejects the plea agreement, the court shall, on the record, inform the parties of this fact, advise the defendant personally in open court ... that the court is not bound by the plea agreement, afford the defendant the opportunity to then withdraw the plea. Fed.R.Crim.P. 11(e)(4).

3. At the time of the guilty plea, the judge imposed a sentence of three months in prison, three

for acceptance of responsibility pursuant to USSG § 3E1.1 upon his guilty plea. After Mr. Barber rescinded his plea and the case went to trial, the sentencing judge determined Mr. Barber was no longer eligible for a two-point reduction for acceptance of responsibility.

Normally, "[w]e review the acceptance of responsibility determination as a question of fact under the clearly erroneous standard." *United States v. Ross*, 920 F.2d 1530, 1537 (10th Cir.1990). The court determined by Mr. Barber's withdrawal of his guilty plea that he had not accepted responsibility for the crime for which he was charged. However, Mr. Barber does not explicitly challenge the court's factual determination, he only claims retaliation. We find no merit to his argument.

Accordingly, we **AFFIRM** the conviction and the sentence.

years of supervised release, and three months of home detention. After the jury trial, the judge entered a total offense level of eleven rather than nine, resulting in a sentence of ten months in prison, three years of supervised release, and restitution payments.