**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 19, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

RYAN RIDDLE,

     Defendant - Appellant.

No. 16-4143
(D.C. No. 2:11-CR-00501-DN-5)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **PHILLIPS**, **McHUGH**, and **MORITZ**, Circuit Judges.
_____

Ryan Riddle represented himself at trial, and a jury found him guilty of six

counts of making a false statement for the purpose of influencing a federally insured

bank. *See* 18 U.S.C. § 1014. The district court then sentenced him to 63 months in

prison.

Riddle appeals his convictions and his sentence. But like his co-defendant

Jeremy Johnson—whose convictions we affirm today in a separate opinion, *see*

*United States v. Johnson*, No. 16-4146, slip op. at 2 (10th Cir. Apr. x, 2018)—Riddle

has waived many of the arguments he purports to present in his opening brief. That's

_____

[*] This order and judgment isn't binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. But it may be cited for its
persuasive value. *See* Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

because Riddle, like Johnson, repeatedly either (1) fails to establish that he raised those arguments below and subsequently fails to argue for plain error on appeal;[1] or (2) fails to adequately present in his opening brief his "contentions and the reasons for them, with citations to the authorities and parts of the record on which [he] relies." Fed. R. App. P. 28(a)(8)(A).

Finally, with one exception, the arguments that Riddle does adequately brief fail on their merits. Accordingly, we affirm his convictions. But because we agree with Riddle that the district court erred in imposing a three-level enhancement under U.S.S.G. § 3B1.1(b), we reverse Riddle's sentence and remand for resentencing.

## Background

As we note in *Johnson*, slip op. at 2, the underlying historical facts in this appeal are complex, familiar to the parties, and not particularly relevant to our

---

[1] As in *Johnson*, slip op. at 7 n.3, the parties dispute whether Riddle can rely on those objections and arguments that his codefendants made below. *Compare, e.g.*, *United States v. Irving*, 665 F.3d 1184, 1207 (10th Cir. 2011) ("Insofar as evidentiary issues are concerned, this court has yet to take a position on vicarious objections."), *with Fortier v. Dona Anna Plaza Partners*, 747 F.2d 1324, 1331 (10th Cir. 1984) ("The objections by the co-defendants were clearly not made on behalf of [appellant], and [appellant] cannot now use the objections of his co-defendants to cure his own failure to object."). But as in *Johnson*, we decline to resolve their disagreement. Instead, we simply assume that Riddle can avoid plain-error review by sufficiently demonstrating that either he *or* at least one of his codefendants raised below each of the arguments that Riddle now advances on appeal. Thus, when we say Riddle fails to demonstrate he raised a particular argument below, we mean he fails to demonstrate that either he or any of his codefendants did so. Likewise, when we say Riddle advanced certain arguments below, we mean that Riddle or at least one of his codefendants advanced them.

2

analysis of the legal issues before us. Thus, we recount those facts only briefly here. Where necessary, we provide additional historical and procedural facts below.

Riddle formerly served as the general manager of a company called IWorks, Inc. (IWorks). Johnson was IWorks' president and sole owner. Part of IWorks' business plan involved processing credit-card payments for items that customers purchased online. To process those payments, IWorks needed what's known as a "merchant account," App. vol. 38, 9875—a type of business bank account that allows businesses to accept and process credit- and debit-card transactions. But in 2008, IWorks' ability to maintain a merchant account was threatened when it was placed on the Member Alert to Control High Risk (MATCH) list after IWorks incurred more than $3 million in fines arising from excessive chargebacks.

A chargeback occurs when a buyer who used a credit card to make a purchase becomes dissatisfied with the selling merchant's refund or return policy and reverses payment to that merchant through his or her credit card. Such chargebacks will result in fines if a merchant incurs more than 100 of them in a single month, or if at least one percent of the merchant's sales for that month result in chargebacks. After three months of fines, a merchant will typically find itself on the MATCH list. And placement on the MATCH list will generally result in an inability to acquire a new merchant account, without which a merchant can't process credit-card payments.

Thus, Johnson and other members of the IWorks team devised a strategy: they would set up multiple merchant accounts in names other than Johnson's. So long as no single merchant account's chargebacks exceeded 100 per month or one percent of

3

sales, no fees would be assessed. And so long as no fees were assessed against any one merchant account for more than three months, no accounts would end up on the MATCH list.

In 2009, Wells Fargo Bank (WFB) began processing most of IWorks' credit-card transactions. WFB is a merchant-acquiring bank; it holds merchant accounts, thus enabling merchants to process credit-card transactions. Merchant-acquiring banks work with Independent Sales Organizations (ISOs), who market credit-card-processing accounts to merchants. Here, the ISO that began opening IWorks' new merchant accounts with WFB was an entity called CardFlex.

Eventually, Johnson and his associates completed 281 merchant-account applications with CardFlex's assistance. Some of the new merchant accounts ended up on the MATCH list. When that happened, Johnson and his associates simply abandoned them and moved processing to different accounts. But those abandoned accounts continued to accrue chargebacks. Eventually, WFB became suspicious and terminated several accounts after an investigation revealed that those accounts were all associated with Johnson.

As a result of this scheme, the government indicted Johnson and several of his associates—including Riddle—for, among other things, multiple counts of making a false statement for the purpose of influencing a federally insured bank. *See* § 1014.

4

After a joint trial at which Riddle represented himself,[2] the jury found him guilty of six counts of making such false statements. The district court sentenced Riddle to 63 months in prison. He appeals.

## Analysis

**I.     Challenges to Riddle's Convictions**

**A.     Sufficiency of the Indictment**

Like Johnson, Riddle first challenges the sufficiency of the indictment. Specifically, he complains that the indictment failed to allege that any false statements were actually communicated to—i.e., received by—a bank. And he asserts that this is an essential element of § 1014. But like Johnson, Riddle fails to provide a precise record citation in his opening brief demonstrating that he raised this specific challenge to the indictment below. *See* 10th Cir. R. 28.2(C)(2) ("For each issue raised on appeal, all briefs must cite the precise reference in the record where the issue was raised and ruled on.").[3] And, like Johnson, Riddle fails to argue for plain error on appeal. Accordingly, we decline to address this argument. *See United States v. Kearn*, 863 F.3d 1299, 1305, 1313 (10th Cir. 2017), *petition for cert. filed* Dec. 21, 2017 (No. 17-7210); *United States v. Barber*, 39 F.3d 285, 287 (10th Cir. 1994).

---

[2] Although Riddle proceeded pro se below, he is represented by counsel on appeal.

[3] Riddle purports to provide the requisite citations in his reply brief. But we have examined those citations, and none of them demonstrate that Riddle or any of his codefendants ever challenged the sufficiency of the indictment's § 1014 charges based on its failure to allege that WFB actually received the false statements.

5

**B.      Sufficiency of the Evidence**

In a related argument, Riddle challenges the sufficiency of the evidence supporting his convictions. In doing so, he asserts that (1) actual receipt of a false statement by a bank is an element of § 1014, and (2) the government failed to prove that element here. But as we explain in *Johnson*, *see* slip op. at 13, 15 n.6, the plain language of § 1014 contains no actual-receipt element. And we won't read one into the statute where none exists.[4] *See United States v. Handley*, 678 F.3d 1185, 1189 (10th Cir. 2012).

Riddle also inserts into his sufficiency argument an allegation that "the district court erred in blocking [the] defendants' efforts to conduct discovery" that might prove WFB never received the false statements. Aplt. Br. 21. But because we conclude that actual receipt of a false statement by a bank isn't an element of § 1014, any discovery error—assuming one occurred, and assuming it was an error of constitutional dimension—was harmless beyond a reasonable doubt. *See Chapman v. California*, 386 U.S. 18, 23–24 (1967).

---

[4] Like Johnson, Riddle fails to cite dicta from our previous cases that might arguably provide some support for his assertion that actual communication to a bank is an element of § 1014. *See, e.g.*, *United States v. Copus*, 110 F.3d 1529, 1534–35 (10th Cir. 1997) ("Under [§ 1014] . . . , the jury must have found [defendant] made a false statement *to a federally insured bank* knowing the statement was false and intending to influence the bank." (emphasis added)); *United States v. Grissom*, 44 F.3d 1507, 1510 (10th Cir. 1995) (listing "ma[king] a false statement *to a bank*" as an element of § 1014 (emphasis added)). Accordingly, Riddle has—like Johnson— waived any reliance on this line of authority.

## C.    Speedy Trial

Riddle next argues that the district court erred in denying his motion to dismiss under the Speedy Trial Act (STA) of 1974, 18 U.S.C. §§ 3161–3174.[5]

At the outset, we note that we could decline to address this issue. The district court provided three reasons for denying Riddle's STA motion: (1) it was untimely under the STA; (2) it was untimely under the court's scheduling order; and (3) it was untimely under Federal Rule of Criminal Procedure 59(a). On appeal, Riddle challenges the first and third of these grounds but fails to challenge the second. Thus, even assuming the district court erred in concluding that Riddle's motion was untimely under the STA and Rule 59(a), its order denying Riddle's STA motion "would still stand on the alternative ground which was not appealed": it was untimely under the district court's scheduling order. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 877 (10th Cir. 2004).

In any event, even if we overlooked this briefing deficiency, we would affirm the district court's order. That's because a defendant's failure "to move for dismissal *prior to trial* . . . shall constitute a waiver of the right to dismissal under [the STA]." § 3162(a)(2) (emphasis added). And here, Riddle filed his STA motion on the third day of jury selection. By then, the district court ruled, the trial had already begun, thus rendering Riddle's motion untimely. We agree.

---

[5] Co-defendant Scott Leavitt—who was represented by counsel at trial—filed the motion to dismiss, and Riddle joined it.

7

"For purposes of the STA, a jury trial commences with the voir dire." *United States v. Arnold*, 113 F.3d 1146, 1149 (10th Cir. 1997), *abrogated on other grounds by State v. Gould*, 23 P.3d 801 (Kan. 2001). More specifically, we indicated in *Arnold*, a jury trial begins with "the *commencement* of voir dire." *Id.* (emphasis added) (citing *United States v. Patten*, 826 F.2d 198, 199 (2d Cir. 1987)); *see also Patten*, 826 F.2d at 199 (holding that even if court construed certain statements as motion for dismissal under STA, "such a motion would have been untimely" because it came after date upon which "[s]election of a jury . . . *began*" (emphasis added)). Here, Riddle filed his STA motion on the morning of February 5, 2016—ten minutes before the start of the final session of a three-day jury-selection process. Because he failed to file that motion before "the *commencement* of voir dire," his motion was untimely under *Arnold*. 113 F.3d at 1149 (emphasis added); *see also United States v. Brown*, 819 F.3d 800, 810 (6th Cir. 2016) (characterizing our opinion in *Arnold* as holding that, "[f]or the purposes of the [STA], trial generally commences when voir dire begins").

Riddle resists this conclusion. He insists that for purposes of the STA, trial doesn't begin until the *end* of voir dire, when the jury is actually sworn in. In support, Riddle points out that we have sometimes said that "trial commences for purposes of the [STA on] the date that a jury is selected." *United States v. Scalf*, 760 F.2d 1057, 1059 (10th Cir. 1985); *see also United States v. Martinez*, 749 F.2d 601, 604 (10th Cir. 1984) ("[T]he trial commenced on September 26, 1983, when the jury

8

was selected."), *abrogated on other grounds by Mathews v. United States*, 485 U.S. 58 (1988).

But it's not clear from *Scalf* when jury selection began or when the jury was sworn in. Thus, *Scalf*'s vague pronouncement that trial begins when the jury "is selected," 760 F.2d at 1059, doesn't prove Riddle's point. Moreover, *Scalf* relies solely on *Martinez* for this proposition. *Id. Martinez*, in turn, relies solely on *United States v. Gonzalez*, 671 F.2d 441 (11th Cir. 1982). *Martinez*, 749 F.2d at 604. And *Gonzalez* squarely rejects Riddle's argument "that trial commences when the jury is sworn," as opposed to "when the court *begins* the voir dire." *Gonzalez*, 671 F.2d at 443 (emphasis added).

True, *Gonzalez* was concerned with when trial "commence[s]" for purposes of § 3161(c)(1), not when trial begins for purposes of § 3162(a)(2). *Gonzalez*, 671 F.2d at 443 & n.1 (quoting § 3161(c)(1)); *see also id.* at 444 n.5. But in *Scalf*, we relied on our conclusion that trial "commenced" on November 16 for purposes of § 3161 to determine that the defendant filed his November 14 STA motion "prior to trial" for purposes of § 3162(a)(2). *Scalf*, 760 F.2d at 1059–60. We see no reason to take a different approach here. And Riddle fails to identify one.

Instead, Riddle offers an alternative argument: he asserts that the phrase "prior to trial" is, at the very least, ambiguous. § 3162(a)(2). And he asks us to apply the rule of lenity and construe that ambiguity in his favor. *See United States v. Gay*, 240 F.3d 1222, 1232 (10th Cir. 2001) ("The rule of lenity requires courts to interpret ambiguous statutes . . . in favor of criminal defendants."). But Riddle fails to assert

9

or establish that he raised his rule-of-lenity argument below. And he doesn't advance a plain-error argument on appeal. Accordingly, even if we assume that § 3162(a)(2) is ambiguous as to whether trial commences (1) when voir dire begins or (2) when the jury is sworn—a questionable assumption given the binding circuit precedent discussed above—we would decline to reverse on this basis. *See Kearn*, 863 F.3d at 1313; *Barber*, 39 F.3d at 287. And because we may therefore affirm the district court's denial of Riddle's STA motion based on his failure to file that motion "prior to trial," § 3162(a)(2), we need not address Riddle's remaining assertion that the district court erred in ruling his motion was also untimely under Rule 59(a).

### D. Motion to Suppress

Riddle next argues that the district court erred in refusing to hold an evidentiary hearing on his motion to suppress—an evidentiary hearing that he asserts would have "address[ed] . . . significant gaps in the database of IWorks email that the government . . . produced to the defendants in discovery."[6] Aplt. Br. 29.

Riddle concedes that his motion sought to have the district court suppress "those 'emails that the government ha[d] in its possession that no longer exist[ed] in the original mailboxes' that were provided to the defense in discovery." Aplt. Br. 32 (quoting Supp. App. vol. 2, 393). In other words, Riddle sought a hearing on a motion to suppress emails that he alleges the government had in its possession but failed to turn over to the defense. And indeed, this was how the district court

---

[6] Leavitt filed the motion to suppress, and Riddle joined it.

10

construed Riddle's motion: it noted that Riddle was "really seeking . . . an evidentiary hearing to obtain evidence that" he could "then seek to suppress." Supp. App. vol. 2, 398.

But on appeal, Riddle advances a different argument. He asserts that (1) unless the government turned over the emails that it had in its possession but hadn't yet disclosed, he was entitled to have the district court suppress the emails the government *had* already disclosed to the defendants; and (2) an evidentiary hearing was therefore required to determine whether the government had the missing emails in its possession or was responsible for their destruction. In short, Riddle concedes he sought below a hearing on a motion to suppress those emails the government allegedly *didn't* turn over to the defense. But he now asserts he was instead entitled to a hearing on whether the district court should suppress emails the government indisputably *did* turn over to the defense. And when "a litigant changes to a new theory on appeal" in this manner, we treat that theory as forfeited—even if it "falls under the same general category as an argument presented at trial." *Lyons v. Jefferson Bank & Tr.*, 994 F.2d 716, 722 (10th Cir. 1993); *see also United States v. Nelson*, 868 F.3d 885, 891 n.4 (10th Cir. 2017). Moreover, Riddle fails to argue for plain error on appeal. Accordingly, we could treat this argument as waived and decline to address it.[7] *See Kearn*, 863 F.3d at 1313.

---

[7] Perhaps we could instead read Riddle's brief as suggesting that he was entitled to an evidentiary hearing on whether the district court should suppress the missing emails, as he originally argued below. But because Riddle doesn't allege that

11

Alternatively, we could reject this argument on the merits. "We review the trial court's denial of an evidentiary hearing on a motion to suppress for an abuse of discretion." *United States v. Chavez-Marquez*, 66 F.3d 259, 261 (10th Cir. 1995). "A trial court is required to grant a suppression hearing only when a defendant presents facts justifying relief. A defendant who requests a hearing bears the burden of showing that there are disputed issues of material fact." *Id.* (quoting *United States v. Woods*, 995 F.2d 713, 715 (7th Cir. 1993)). And to satisfy that burden, "the motion to suppress must raise factual allegations that are 'sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact . . . are in issue.'" *Id.* (quoting *United States v. Walczak*, 783 F.2d 852, 857 (9th Cir. 1986)).

Riddle's motion failed to raise such factual allegations. His theory on appeal is apparently that the government either had the missing emails in its possession or was responsible for their "loss or destruction." Aplt. Br. 32. But Riddle fails to identify a single factual allegation in his motion to suppress that is "sufficiently definite, specific, detailed, and nonconjectural" to create a genuine factual dispute on this point. *Chavez-Marquez*, 66 F.3d at 261 (quoting *Walczak*, 783 F.2d at 857).

Moreover, while Riddle argues the district court's factual findings aren't entitled to deference, he doesn't seriously dispute those findings. And those findings

---

the government ever attempted to introduce any of the missing emails into evidence at trial, we fail to see how any error in refusing to hold such an evidentiary hearing could have possibly prejudiced him.

establish that (1) the prosecution didn't obtain possession of the email server until *after* the defendants first alleged certain emails were missing from it; and (2) the defendants had access to every email the government had obtained from the server. In light of these unchallenged factual findings, we conclude the district court didn't abuse its discretion in refusing to conduct an evidentiary hearing. *See id.*

### E.     Evidentiary Rulings

Next, Riddle argues that the district court erred in excluding (1) evidence that any false statements on the merchant-account applications were immaterial and (2) the testimony of the defendants' expert witness, Gene Hoffman Jr.

To support the first of these two arguments, Riddle provides record citations that establish the district court indeed refused to admit certain evidence—evidence that Riddle says would have demonstrated the false statements' immateriality. The problem is that Riddle, like Johnson, fails to assert or establish that he ever argued to the district court his theory that the testimony and evidence he sought to admit was relevant to prove the statements' immateriality. In fact, like Johnson, Riddle appears to concede in his reply brief that he didn't advance his immateriality argument below. And like Johnson, Riddle also fails to make a plain-error argument in his opening brief. Accordingly, as in *Johnson*, slip op. at 28–30, we treat this argument as waived and decline to consider it, *see Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1131 (10th Cir. 2011). For the same reason, we likewise decline to consider Riddle's related suggestion that the district court erred in instructing the jury that the government need not prove the false statements were material; he neither asserts that

13

he objected to the district court's instruction below nor argues for plain error on appeal. *See Richison*, 634 F.3d at 1131.

Riddle next argues that the district court abused its discretion in excluding Hoffman's testimony. *See United States v. Avitia-Guillen*, 680 F.3d 1253, 1256 (10th Cir. 2012). The district court excluded that testimony after determining that Hoffman lacked the requisite "knowledge, skill, experience[,] or training" to testify as an expert. App. vol. 65, 17544; *see also* Fed. R. Evid. 702. And the district court based that ruling on several factual findings. For instance, it found that Hoffman had only "infrequent[]" experience with "the underwriting and application processes," App. vol. 65, 17543–44; that his "involvement with the card payment system" was "relatively intermittent," *id.* at 17544; that his "experience" with "the relationships of acquiring banks, ISOs, and third-party processors and merchants" was "intermittent and limited," *id.* at 17545–46; and that he lacked "familiarity with the industry standards in the disclosure area," *id.* at 17546.

Like Johnson, Riddle acknowledges some of these factual findings. But like Johnson, he neither suggests these findings are clearly erroneous nor directly engages with the district court's conclusion that Hoffman was unqualified to testify. Riddle does list (1) Hoffman's background and experience and (2) the testimony Hoffman would have offered. But he fails to explain how the former rendered Hoffman qualified to offer the latter. That is, he fails to "explain what was wrong with the reasoning that the district court relied on in reaching its decision." *Nixon v. City & Cty. of Denver*, 784 F.3d 1364, 1366 (10th Cir. 2015); *see also id.* at 1369 (affirming

14

district court's ruling without discussion because appellant's opening brief failed "to challenge the basis of" that ruling).[8]

Instead, Riddle argues that the district court should have admitted Hoffman's testimony because it would have provided the jury with "context for" the defendants' actions. Aplt. Br. 43 (quoting *United States v. Garcia*, 635 F.3d 472, 477 (10th Cir. 2011)). In other words, Riddle suggests the district court erred by excluding expert testimony that would have supported his theory of the case. But even assuming Hoffman's testimony might have helped the jury "understand the evidence" in a way that would have been favorable to Riddle, the district court didn't abuse its discretion in excluding that testimony unless Hoffman was also "qualified as an expert by knowledge, skill, experience, training, or education" to offer it. Fed. R. Evid. 702(a). The district court determined that Hoffman wasn't so qualified. And because Riddle fails to "explain what was wrong with" the district court's reasoning on that point, *Nixon*, 784 F.3d at 1366, we decline to reverse on this basis.

## F.    Confrontation Clause

Riddle next argues that the district court violated his rights under the Confrontation Clause by precluding the defendants from eliciting certain evidence on cross-examination after the government allegedly opened the door to that evidence on direct. Yet Riddle neither demonstrates that he raised a Confrontation Clause

---

[8] Like Johnson, Riddle attempts to challenge the district court's factual findings for the first time in his reply brief. But arguments raised for the first time in a reply brief are waived. *See United States v. Beckstead*, 500 F.3d 1154, 1163 (10th Cir. 2007).

15

argument below nor argues for plain error on appeal. Instead, like Johnson, he suggests in his reply brief that he didn't have to expressly invoke the Confrontation Clause to preserve this argument. But "where a Confrontation Clause objection is not *explicitly* made below we will not address the constitutional issue in the absence of a conclusion that it was plain error for the district court to fail to raise the constitutional issue *sua sponte*." *United States v. Perez*, 989 F.2d 1574, 1582 (10th Cir. 1993) (en banc) (emphasis added). And because Riddle doesn't argue for plain error on appeal, we decline to address this argument. *See Richison*, 634 F.3d at 1131.

Alternatively, we could perhaps read Riddle's brief as asserting that the district court committed a mere evidentiary error by refusing to admit this evidence—an argument we would review for abuse of discretion. *See United States v. Curtis*, 344 F.3d 1057, 1067 (10th Cir. 2003). But under that deferential standard of review, we would reject this argument as well.

Riddle suggests that the district court had no choice but to allow him to cross-examine witnesses about any subject the government explored on direct examination because the government "open[ed] the door" to that evidence. Aplt. Br. 48. But "[w]hen a party opens the door to a topic, the admission of rebuttal evidence on that topic" merely "becomes permissible"; it doesn't become mandatory, as Riddle suggests. *Tanberg v. Sholtis*, 401 F.3d 1151, 1166 (10th Cir. 2005); *see also id.* ("[T]he decision to admit or exclude rebuttal testimony remains within the trial court's sound discretion.").

Here, Riddle doesn't dispute that admission of the testimony he sought to elicit was "prohibited by" the district court's pretrial orders. Aplt. Br. 45. Nor does he dispute

16

that he failed to object when the government successfully elicited similarly barred testimony on direct. Finally, he doesn't challenge the district court's suggestion that the defendants were attempting to use the open-the-door doctrine to circumvent the court's pretrial orders by intentionally declining to object to the government's questions. Under these circumstances, the district court didn't abuse its discretion in refusing to allow the defendants to "waive [themselves] into a position where" the court would admit evidence it had previously ruled was inadmissible. App. vol. 48, 12474.

### G. Due Process Rights

Riddle next asserts that the district court violated his due-process rights by (1) commenting on the possibility that Riddle would appeal, thus suggesting to the jury that the court believed the jury would convict him; (2) making objections on the government's behalf; and (3) demonstrating hostility toward the defendants and defense counsel. But like Johnson, Riddle fails to provide any record citations establishing that he objected to the district court's actions or otherwise raised these arguments below. And like Johnson, he also fails to argue for plain error on appeal. *See Johnson*, slip op. at 34. Accordingly, we treat these arguments as waived and decline to consider them. *See Richison*, 634 F.3d at 1131.

### H. Conflict of Interest

Riddle next argues that the United States Attorney's Office prosecuting his case had a conflict of interest and that the district court therefore erred in failing to disqualify that office from prosecuting him. Riddle also points to his motion to

compel information regarding this alleged conflict and asserts that the district court erred in denying that motion as well.[9]

But after dedicating three pages of his brief to the procedural history of these motions, Riddle provides only a single paragraph that could loosely be described as argument. That paragraph merely (1) identifies two federal district court cases, and (2) attempts to incorporate by reference the arguments Riddle made below in his motion to disqualify. But merely listing cases—without discussion or elaboration—doesn't substitute for actual argument. *See* Fed. R. App. P. 28(a)(8)(A) (explaining that "argument" section of appellant's brief must contain both "citations to the authorities . . . on which the appellant relies" *and* "appellant's contentions and the reasons for them"); *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("Consistent with this requirement, we routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief."). Likewise, "[i]ncorporating by reference portions of lower court or agency briefs or pleadings is disapproved and does not satisfy the requirements of Fed. R. App. P. 28(a) and (b)." 10th Cir. R. 28.3(B); *see also United States v. Gordon*, 710 F.3d 1124, 1137 n.15 (10th Cir. 2013) (citing Rule 28.3(B)'s precursor and declining to consider arguments that defendant "purport[ed] to assert through incorporation by reference to his trial court papers"). Thus, we treat this issue as waived and decline to consider it. *See Bronson*, 500 F.3d at 1104.

---

[9] Leavitt filed a Motion to Disqualify and a Motion to Compel. We assume that Riddle can rely on these motions for preservation purposes. *See supra* note 1.

## II.     Challenges to Riddle's Sentence

### A.     Calculating Loss

Riddle next asserts that the district court erred in calculating loss for purposes of U.S.S.G. § 2B1.1's sentencing enhancement. In support, he argues that the district court (1) made impermissible assumptions; (2) erred in considering uncharged and acquitted conduct; and (3) failed to offset certain fees that IWorks paid. In analyzing Riddle's arguments, "[w]e review the district court's loss[-]calculation methodology de novo and its factual finding of loss for clear error." *United States v. Evans*, 744 F.3d 1192, 1196 (10th Cir. 2014).

#### 1.     Impermissible Assumptions

At the outset, Riddle complains that the government failed to prove "actual pecuniary loss" to WFB. Aplt. Br. 63. But this argument overlooks the fact that in calculating loss for purposes of § 2B1.1, the district court didn't rely on loss to WFB; instead, the district court relied on loss to the card-issuing banks. Thus, even assuming the government failed to prove actual loss to WFB, that fact is irrelevant for purposes of the district court's § 2B1.1 analysis.[10]

Riddle also suggests that the district court made an erroneous factual finding in determining that each chargeback cost the relevant card-issuing bank $25. Like

---

[10] For the first time in his reply brief, Riddle argues that the government waived any reliance on loss to the card-issuing banks. But arguments advanced for the first time in a reply brief are waived. *See Beckstead*, 500 F.3d at 1163. And even if we exercised our discretion to consider this argument, we would reject it for the reasons we discuss in *Johnson*, slip op. at 36–38.

Johnson, Riddle points out that this finding relies on the assumption that each chargeback was "tied to [a different] consumer credit card" and resulted in that consumer obtaining a replacement card. Aplt. Br. 64. But like Johnson, Riddle fails to acknowledge testimony indicating that (1) each chargeback cost the card-issuing bank between $25 and $35; and (2) this amount includes not only the cost of reissuing the card, but also the cost of staffing a call center that processes chargebacks and provides customer service. Thus, by selecting an amount at the low end of this range, the district court made a "reasonable estimate of the loss" caused by each chargeback; while some chargebacks likely cost less than $25, some apparently cost more. *United States v. Mullins*, 613 F.3d 1273, 1292 (10th Cir. 2010) (noting that "district court 'need only make a reasonable estimate of the loss,' not make a perfect accounting" (quoting § 2B1.1(b)(1), cmt. n.2(C)); *see also id.* (explaining that district court's factual finding of loss isn't clearly erroneous simply because it's "possibly or even probably wrong; the error must be pellucid to any objective observer" (quoting *Watson v. United States*, 485 F.3d 1100, 1108 (10th Cir. 2007)))).

### 2. Uncharged and Acquitted Conduct

Riddle next argues that the district court violated his Fifth and Sixth Amendment rights by relying on uncharged and acquitted conduct to increase his sentence. But as we explain in *Johnson*, *see* slip op. at 38–39, this argument is squarely foreclosed by both Supreme Court and Tenth Circuit precedent, *see United States v. Watts*, 519 U.S. 148, 157 (1997) ("We therefore hold that a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as

20

that conduct has been proved by a preponderance of the evidence."); *United States v. Lewis*, 594 F.3d 1270, 1289 (10th Cir. 2010) (noting that defendant's challenge to use at sentencing of "evidence of losses caused by conduct of which he had been acquitted" could "be disposed of summarily" under *Watts*).

Riddle insists that *Watts* doesn't "foreclose[] an as-applied challenge" to his sentence. Aplt. Br. 73. Specifically, he asserts that "[t]he door . . . remains open for a defendant to demonstrate that his sentence, whether inside or outside the advisory Guidelines range, would not have been upheld [as substantively reasonable] but for the existence of a fact found by the sentencing judge and not by the jury." Aplt. Br. 73 n.20 (quoting *Gall v. United States*, 552 U.S. 38, 60 (2007) (Scalia, J., concurring)). But as we note in *Johnson*, *see* slip op. at 39, "the Courts of Appeals have uniformly taken [the Supreme Court's] continuing silence" on this point "to suggest that the Constitution *does* permit otherwise unreasonable sentences supported by judicial factfinding, so long as they are within the statutory range," *Jones v. United States*, 135 S. Ct. 8, 9 (2014) (Scalia, J., dissenting from denial of cert.); *see also United States v. Redcorn*, 528 F.3d 727, 745 (10th Cir. 2008) (rejecting argument "that it is unconstitutional for the sentencing judge to rely upon a fact not found by the jury or admitted by the defendant in determining a sentence, where the sentence would not be reasonable in the absence of that fact"). Thus, we reject this argument as well.

Alternatively, even assuming the district court could rely on uncharged or acquitted conduct to determine loss, Riddle argues the court failed to find a causal connection between that conduct and "loss to the bank." Aplt. Br. 76. But again, to the

21

extent Riddle appears to suggest the government was required to prove—or the district court was required find—loss to WFB, that argument overlooks the fact that the district court's loss calculation instead relied on losses to the card-issuing banks, not WFB. Moreover, the district court *did* make a causation finding: it expressly found that "the other merchant accounts gave rise to [the relevant] harm" to the card-issuing banks. App. vol. 38, 9900.

Finally, Riddle suggests that any causation finding the district court did make was unsupported by the record. But Riddle bases this argument on his position that the "*conduct of conviction*" didn't cause "the alleged harm." Aplt. Br. 77 (emphasis added). And "[i]n calculating loss under the Guidelines, the district court does not limit itself to conduct underlying the offense of conviction, but rather may consider all of the defendant's 'relevant conduct.'" *United States v. Griffith*, 584 F.3d 1004, 1011 (10th Cir. 2009) (quoting U.S.S.G. § 1B1.3). Moreover, § 1B1.3 defines relevant conduct broadly: it includes not just the "criminal activity" itself, but "all acts and omissions" committed "within the scope of the jointly undertaken criminal activity." § 1B1.3(a)(1)(B)(i). Accordingly, even assuming Riddle is correct that there exists no causal link between "the conduct of conviction" and loss to the card-issuing banks, Aplt. Br. 77, he fails to demonstrate that the district court's causation finding lacks support on the record.

### 3. Fines and Fees

Riddle also argues that the district court "erred by failing to offset fees paid by IWorks." Aplt. Br. 69; *see also* § 2B1.1, cmt. n.3(E)(i) ("Loss shall be reduced by . . . [t]he money returned, and the fair market value of the property returned and the services

22

rendered, by the defendant or other persons acting jointly with the defendant, to the victim before the offense was detected.").

But Riddle fails to identify in his opening brief where he raised below the fact-based arguments he now advances on appeal. And as the government points out, "failure to assert a factual dispute at sentencing waives the challenge because it prevent[s] . . . the district court from resolving the fact issue." *United States v. Wright*, 848 F.3d 1274, 1285 (10th Cir.) (second alteration in original) (quoting *United States v. Shengyang Zhou*, 717 F.3d 1139, 1154 (10th Cir. 2013)), *cert. denied*, 138 S. Ct. 115 (2017). Thus, we treat this argument as waived and decline to address it.

### B.    Sophisticated Means

Next, Riddle argues that the district court erred in imposing a "sophisticated[-]means" enhancement under § 2B1.1(b)(10)(C). In support, he asserts that he was merely "convicted of six instances of someone supplying incorrect information on a merchant account application." Aplt. Br. 81. And he maintains that such conduct isn't sophisticated.

But as we note in *Johnson*, slip op. at 45, the Guidelines don't "require every step of the defendant's scheme to be particularly sophisticated; rather, . . . the [§ 2B1.1(b)(10)(C)] enhancement applies when the execution or concealment of a scheme, *viewed as a whole*, is 'especially complex or especially intricate.'"[11] *United*

---

[11] In a single sentence in his opening brief, Riddle asserts that a 2015 amendment to the Guidelines requires a district court to find that a "defendant's own specific conduct, limited to the specific convicted offense, was 'sophisticated.'" Aplt.

*States v. Weiss*, 630 F.3d 1263, 1279 (10th Cir. 2010) (emphasis added) (quoting

§ 2B1.1 cmt. n.9(B)); *see also United States v. Jenkins-Watts*, 574 F.3d 950, 962 (8th

Cir. 2009) ("Even if any single step is not complicated, repetitive and coordinated

conduct can amount to a sophisticated scheme." (quoting *United States v. Bistrup*,

449 F.3d 873, 882 (8th Cir. 2006))).

Here, the district court pointed to ample evidence that the defendants'

scheme—when viewed as a whole—was sufficiently sophisticated to warrant the

enhancement:

> Establishment of each merchant account required a nominee owner, a corporate entity, an out-of-state address using a maildrop service, an agreement to forward mail from the fictitious addresses to [I]Works' address in St. George, out-of-state telephone service with a prefix number corresponding to the state of incorporation, designation of employee population on the applications, a depository bank account in the nominee's name with Scott Leavitt's signatory authority to enable fund transfer, transfer of funds from the nominee depository accounts directly to [I]Works and Johnson bank accounts, a tax identification number, and tax returns in the name of the nominee owners and corporations.

Supp. App. vol. 3, 606; *see also* § 2B1.1 cmt. n.9(B) (noting that, "in a telemarketing

scheme, locating the main office of the scheme in one jurisdiction but locating

---

Br. 81 (quoting § 2B1.1(b)(10)(C)). Thus, he concludes, the district court erred in "considering acquitted conduct . . . to justify a finding of sophisticated means." *Id.* at 82. But Riddle's opening brief neither cites the language of the amendment on which he relies nor offers any argument to support his cursory statement that this amendment "require[d]" the district court to limit itself "to the specific convicted offense" in determining whether to apply the enhancement. *Id.* at 81. Instead, Riddle develops this argument for the first time in his reply brief. Accordingly, we treat this argument as waived and decline to consider it. *See* Fed. R. App. P. 28(a)(8)(A); *Beckstead*, 500 F.3d at 1163; *Bronson*, 500 F.3d at 1104.

soliciting operations in another jurisdiction ordinarily indicates sophisticated means," as does "[c]onduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts"). In light of these facts, the district court didn't err in imposing the two-level increase under § 2B1.1(b)(10)(C).

### C. Manager or Supervisor

Finally, Riddle asserts that the district court erred in imposing a three-level enhancement under § 3B1.1(b), which applies "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive." Specifically, Riddle argues that none of the people he supervised constitute "participants" in the crimes at issue. § 3B1.1(b).

In its opening brief, the government pointed out that the three-level enhancement applies if "the defendant was a manager or supervisor . . . and the criminal activity involved five or more participants *or was otherwise extensive*." § 3B1.1(b) (emphasis added). Thus, the government reasoned, the district court's finding that the criminal activity was "extensive," *id.*, rendered it unnecessary for the court to *also* find that Riddle supervised any participants. But as the government conceded at oral argument, this court has squarely rejected that argument. *See United States v. Gallant*, 537 F.3d 1202, 1241–42 (10th Cir. 2008) (remanding for specific factual findings because district court imposed § 3B1.1(b) enhancement without first finding that defendants supervised at least one participant; noting that "[district] court may have been laboring under the misapprehension that if the defendants' activity was otherwise extensive, then there was

25

no requirement that there be at least one criminally responsible subordinate involved in their activity").

Moreover, although there may be "ample evidence in the record" from which we could conclude that Riddle indeed supervised at least one participant, *id.*, "appellate fact-finding cannot substitute for the district court's duty to articulate clearly the reasons for the enhancement," *id.* (quoting *United States v. Chisum*, 502 F.3d 1237, 1243 (10th Cir. 2007)). Accordingly, we reverse Riddle's sentence and remand "for the entry of more specific findings regarding the presence of subordinate participants in the offenses." *Id.*

## Conclusion

We affirm Riddle's convictions. But we reverse his sentence and remand for resentencing.


Entered for the Court


Nancy L. Moritz
Circuit Judge